UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GADI BRAUDE                                              **VERIFIED**
Thornhill, ON L4J 4H5                                    **ANSWER**
Canada
                                    Petitioner,

   -against-                                         Civ. Action No. 7:22-cv-03586

DORONA MIA ZIERLER                                       Assigned to: Hon. Nelson S. Román
                                                        United States District Judge
South Fallsburg, NY 12779

                                    Respondent.
-------------------------------------------------------x

### ANSWER TO THE PETITION UNDER THE HAGUE CONVENTION FOR THE RETURN OF THE PARTIES' CHILDREN, NBB and AMAB, TO CANADA

The Respondent, DORONA MIA ZIERLER (the "Mother"), by her attorneys, THORSEN LAW OFFICES, files this Verified Answer in response to the Petition filed by the Petitioner, GADI BRAUDE (the "Father"):

1.     Denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the Petition, except admits that the parties have two children of their marriage, *to wit*, NBB (d/o/b: 2017), and AMAB (d/o/b: 2021), and that the Mother fled with the children from Canada to the United States, and respectfully refers the Court to the applicable law.

2.     Denies the allegations contained in paragraph "2" of the Petition, except admits that the Mother fled with the children from Canada to the United States on December 29, 2021

3.     Admits the allegations contained in paragraph "3" of the Petition.

4.     Admits the allegations contained in paragraph "4" of the Petition.

1

5.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the Petition, and respectfully refers the Court to the applicable law.

6.      Denies the allegations contained in paragraph "6" of the Petition, and respectfully refers the Court to the applicable law.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "7" of the Petition, except admits that the subject children are currently residing with the Mother in South Fallsburg, New York 12779, which is the residence of the Mother's parents, Rabbi Lawrence Zierler and Bernice Zierler, and respectfully refers the Court to the applicable law.

8.      Admits to the allegations contained in paragraph "8" of the Petition.

9.      Admits to the allegations contained in paragraph "9" of the Petition.

10.     Admits to the allegations contained in paragraph "10" of the Petition.

11.     Admits to the allegations contained in paragraph "11" of the Petition.

12.     Admits to the allegations in paragraph "12", except states that the parties moved into a small basement apartment that they were renting after their wedding.

13.     Admits to the allegations of paragraph "13" of the Petition.

14.     Admits to the allegations contained in paragraph "14" of the Petition.

15.     Admits to the allegations contained in paragraphs "15" of the Petition.

16.     Admits to the allegations contained in paragraphs "16" of the Petition.

17.     Admits to the allegations contained in paragraphs "17" of the Petition.

18.    Denies the allegations contained in paragraph "18" of the Petition, except admits that NBB's paternal grandparents, some cousins and extended family, and some friends live in Canada, and states that NBB has extensive family in the New York area, including but not limited to maternal grandparents, maternal Aunt, several great- Aunts and great-Uncles, and second cousins.

19.    Denies the allegations contained in paragraph "19" of the Petition, except admits that prior to the time the Mother fled from Canada with the children, NBB attended some family events and only a few playdates in Canada, and states that the Father's criminal charges involving accessing and possession of child pornography have and will deter other parents from scheduling playdates for their children with NBB.

20.    Denies the allegations contained in paragraph "20" of the Petition, except admits that NBB had a pediatrician in Canada and received medical care in Canada, and states that NBB currently has a pediatrician in New York and currently receives medical care in New York.

21.    Admits the allegations in paragraph "21" of the Petition, and states that NBB was enrolled in the Jewish Montessori School preschool program because at that time, the Mother was employed by the school, which was the only reason the parties could afford said program.

22.    Admits to the allegations in paragraph "22" of the Petition, and states that NBB's speech therapy was done virtually, via zoom, and that NBB is in the process of being approved for in-person speech therapy in New York.

23.     Denies the allegations contained in paragraph "23" of the Petition, except admits that throughout the parties' marriage, the Mother was subjected to wrongful conduct by the Father and was the victim of domestic violence perpetrated by the Father.

24.     Denies the allegations contained in paragraph "24" of the Petition, except admits that in December 2019, the Father, without provocation, came into the room where the Mother was located and threw three items at the Mother, including a phone, which missed the Mother and hit a wall, shattering and breaking the phone.

25.     Admits the allegations contained in paragraph "25" of the Petition, and states that the Father attempted to strangle himself by tying a string around his own neck and forcefully pulling it.

26.     Admits the allegations contained in paragraph "26" of the Petition, and states that the Father sought treatment from at least four different therapists after his diagnosis of Borderline Personality Disorder, but he failed to stay consistent with treatment plans, and he repeatedly terminated his relationship with his treating therapist soon after starting treatment.

27.     Admits to the allegations contained in paragraph "27" of the Petition.

28.     Admits to the allegations contained in paragraph "28" of the Petition.

29.      Admits to the allegations contained in paragraph "29" of the Petition.

30.     Denies the allegations set forth in paragraph "30" of the Petition, but admits that Jewish Family and Child Services of Greater Toronto ("JFCS") became involved with the family as a result of Petitioner's criminal charges, and states that JFCS, from the outset, authorized the Mother to live with and care for the parties' two children independently, without any supervision; that it was the Father and not the children, who was mandated to

4

be supervised; that the children were not under the paternal grandparent's supervision; and that JFCS permitted the paternal grandparents to supervise the Father with the children on a limited and temporary basis because the Mother was also residing with them.

31.    Admits the allegations contained in paragraph "31" of the Petition.

32.    Admits the allegations contained in paragraph "32" of the Petition.

33.    Admits the allegations contained in paragraph "33" of the Petition.

34.    Denies the allegations contained in paragraph "34" of the Petition, except admits that the parties resided with their children in their own apartment in Toronto until the Mother fled with the children to the United States on December 29, 2021.

35.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "35" of the Petition, except admits that the Father's criminal case is pending in Canada and that the Father is not permitted to legally travel outside Canada pursuant to the conditions of his release.

36.    Admits the allegations contained in paragraph "36" of the Petition.

37.    Admits the allegations contained in paragraph "37" of the Petition.

38.    Admits the allegations contained in paragraph "38" of the Petition.

39.    Denies the allegations contained in paragraph "39" of the Petition.

40.    Denies the allegations contained in paragraph "40" of the Petition, except admits that AMAB's paternal grandparents, and some cousins and extended family live in Canada, and states that AMAB has extensive family in the New York area, including maternal grandparents, maternal Aunt, several great- Aunts and great-Uncles, and second cousins.

41.    Admits the allegations contained in paragraph "41" of the Petition.

42.     Denies the allegations contained in paragraph "42" of the Petition, except admits that AMAB had a pediatrician in Canada and had received medical care in Canada, and admits that AMAB currently has a pediatrician in New York and currently receives medical care in New York.

43.     Denies the allegations contained in paragraph "43" of the Petition, except admits that until the Mother fled from Canada with the children, the children lived in Canada and for the last approximately two years, they had limited interactions with anyone outside of their family primarily due to the COVID-19 pandemic.

44.     Denies the allegations contained in paragraph "44" of the Petition, except admits that prior to December 29, 2021, the children lived in Canada.

45.     Denies the allegations contained in paragraph "45" of the Petition, except admits that on December 27, 2021, the Mother's father, Rabbi Lawrence Zierler, and the Mother's sister, Sarah Zierler, came to Canada to visit the Mother and the parties' children.

46.     Denies the allegations contained in paragraph "46" of the Petition, except admits that the Father became very angry with the Mother and flew into a verbal rage towards the Mother.

47.     Admits the allegations contained in paragraph "47" of the Petition.

48.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "48" of the Petition, except admits that Rae Szereszewski called the Canadian police to inform them that the Father was suicidal.

49.     Denies the allegations contained in paragraph "49" of the Petition.

50.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "50" of the Petition, except admits that the paramedics and police came to the parties' apartment.

51.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "51" of the Petition, except admits that the police insisted that the Father be transported to a local Canadian hospital.

52.     Denies the allegations contained in paragraph "52" of the Petition to the extent that the Mother is uncertain how many times the Father expressed feelings of depression and suicidal ideation to the Mother except to state that he did so frequently.

53.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "53" of the Petition.

54.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "54" of the Petition.

55.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "55" of the Petition, except admits that the parties shared a phone plan.

56.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "56" of the Petition.

57.     Admits the allegations contained in paragraph "57" of the Petition, and states that during these conversations, the Father would often use abusive language, threats and harassment towards the Mother.

58.     Admits the allegations contained in paragraph "58" of the Petition.

59.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "59" of the Petition, except states that the Father did not declare his pending criminal charges in Canada at the time he submitted his application.

60.     Admits the allegations contained in paragraph "60" of the Petition.

61.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "61" of the Petition.

62.     Admits the allegations contained in paragraph "62" of the Petition.

63.     Admits the allegations contained in paragraph "63" of the Petition.

64.     Admits the allegations contained in paragraph "64" of the Petition.

65.     Admits the allegations contained in paragraph "65" of the Petition.

66.     Admits the allegations contained in paragraph "66" of the Petition.

67.     Admits the allegations contained in paragraph "67" of the Petition.

68.     Admits the allegations contained in paragraph "68" of the Petition.

69.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "69" of the Petition.

70.     Denies the allegations contained in paragraph "70" of the Petition, except admits that there was a virtual court conference scheduled for and held on May 16, 2022, before the Family Court, Sullivan County, New York, in connection with the Mother's Family Offense Petition.

71.     See above.

72.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "72" of the Petition, and respectfully refers the Court to the applicable law.

73.     Admits the allegations contained in paragraph "73" of the Petition.

74.     Denies the allegations contained in paragraph "74" of the Petition, except admits that the children had been residing in Canada until December 29, 2021, and respectfully refers the Court to the applicable law.

75.     Denies the allegations contained in paragraph "75" of the Petition, except admits that the children had lived in Ontario, Canada, until December 29, 2021.

76.     Denies the allegations contained in paragraph "76" of the Petition, and respectfully refers the Court to the applicable law.

77.     Denies the allegations contained in paragraph "77" of the Petition, except admits that the children had resided Canada, that the Father, paternal grandparents and some extended family and friends are in Canada, and states that children's involvement and integration in life in Canada was curtailed for a period of time as a result of the criminal charges against the Father and the COVID-19 pandemic.

78.     Denies the allegations contained in paragraph "78" of the Petition, except admits that at times, the Father had some involvement in the children's lives.

79.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "79" of the Petition, and respectfully refers the Court to the applicable law.

80.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "80" of the Petition, and respectfully refers the Court to the applicable law.

81.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "81" of the Petition, and respectfully refers the Court to the applicable law.

82.     Denies the allegations contained in paragraph "82" of the Petition, and respectfully refers the Court to the applicable law.

83.     Denies the allegations contained in paragraph "83" of the Petition, and respectfully refers the Court to the applicable law.

84.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "84" of the Petition, and respectfully refers the Court to the applicable law.

85.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "85" of the Petition, and respectfully refers the Court to the applicable law.

86.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "86" of the Petition, and respectfully refers the Court to the applicable law.

87.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "87" of the Petition, and respectfully refers the Court to the applicable law.

88.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "88" of the Petition, and respectfully refers the Court to the applicable law.

89.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "89" of the Petition, and respectfully refers the Court to the applicable law.

90.     Denies the allegations contained in paragraph "90" of the Petition.

91.     Denies the allegations contained in paragraph "91" of the Petition.

92.     Denies the allegations contained in paragraph "92" of the Petition.

93.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "93" of the Petition, and respectfully refers the Court to the applicable law.

94.     Denies the allegations contained in paragraph "94" of the Petition.

95.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "95" of the Petition, and respectfully refers the Court to the applicable law.

96.     Admits to the truth of the allegations contained in paragraph "96" of the Petition.

97.     See above.

98.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "98" of the Petition, and respectfully refers the Court to the applicable law.

99.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "99" of the Petition, and respectfully refers the Court to the applicable law.

100.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "100" of the Petition, and respectfully refers the Court to the applicable law.

101.    Denies the allegations contained in paragraph "101" of the Petition.

102.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "102" of the Petition, and respectfully refers the Court to the applicable law.

103.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "103" of the Petition, and respectfully refers the Court to the applicable law.

104.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "104" of the Petition, and respectfully refers the Court to the applicable law.

## AS AND FOR A FIRST SEPARATE AND DISTINCT DEFENSE

105.    The Court should deny the Petition and deny the return of the children to Canada because the Hague Convention does not apply in this case.

106.    The Court in Jacquety v. Baptista, 538 F.Supp.3d 325, 331 (2021), explained as follows: "The Convention's drafters were particularly concerned by the practice in which a family member would remove a child to jurisdictions more favorable

12

to his or her custody claims in order to obtain a right of custody from the authorities of the country to which the child has been taken."

107.   The Court in Jacquety v. Baptista, *supra*, further held that the Convention's remedy of repatriation is designed to "deter parents from crossing international boundaries in search of a more sympathetic court." Id. at 332.

108.   The instant case does not involve a family member who is removing a child to another jurisdiction which may be more favorable to her custody claim, or to try and have the issue of custody determined by another court.

109.   In this case, jurisdiction of the issue of custody of the parties' children is before the Canadian court, and there is no jurisdictional issue or dispute regarding Canada being the proper forum for a determination regarding child custody.

110.   In particular, in March, 2022, the Father commenced a court case against the Mother before the Superior Court of Justice, Toronto, Ontario, Canada, which involves the issue child custody (hereinafter the "Canadian court proceeding"). This litigation is pending before the Canadian court.

111.   The Mother has appeared and participated in the Canadian court proceeding.

112.   The Mother has consented to jurisdiction of the parties' child custody issues being heard and determined by the Canadian court.

113.   The Mother has thus consented to Ontario, Canada, as the appropriate forum to hear and determine the issue of child custody of the parties' two children.

114.   In fact, the Mother has a pending request before the Superior Court of Justice, Toronto, Canada, for permission to relocate to New York State, U.S.A. (See **Exhibit A**).

115.   Based upon the foregoing, the parties' custody dispute will be determined by the correct jurisdiction, *to wit*, in Ontario, Canada, including the issue now sought to be litigated before this Court, or the Mother's relocation request.

116.   One of the main purposes of the Hague Convention was to ensure that a child custody dispute would be determined in the correct jurisdiction.

117.   Based upon the specific facts and circumstances of this case, the Hague Convention does not apply, as there are no jurisdictional issues since the Mother has consented to Ontario, Canada, being the appropriate forum to hear and determine the parties' custody dispute, and the Mother's request to relocate to New York State, and the children's residence in New York does not impact or effect the foregoing.

118.   The Court should deny the Petition and deny repatriation of the children to Canada because there is no dispute that the parties' child custody dispute will be determined in the correct jurisdiction, *to wit,* in Ontario, Canada.

## AS AND FOR A SECOND SEPARATE AND DISTINCT DEFENSE

119.   The Mother restates and realleges the allegations contained in Paragraphs 1 through 118 of this Answer as though fully set forth herein.

120.   The Court should deny the Petition and deny repatriation of the children to Canada because the children's move to New York was not wrongful because there was no breach of the Father's custody rights.

14

121.    Pursuant to Article 5 of the Hague Convention, "rights of custody" is defined to "include rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence."

122.    The Father's custody rights were restricted by the Canadian court in connection with the Canadian court proceeding, and the children's move to New York does not interfere with or breach the Father's custody rights.

123.    The Father's custody rights have been restricted due to the criminal charges filed against him in connection with horrific acts committed by the Father.

124.    Specifically, on or about October 14, 2020, the Father was arrested in Canada and charged with possession of child pornography [section 163.1(4) CCC] and access to child pornography [section 163.1(4.1) CCC].

125.    The Father's arrest was part of a larger global police investigation known as Operation H, which originated in New Zealand.

126.    Police officials from New Zealand said that as part of Operation H, the Digital Child Exploitation Team seized and examined hundreds of thousands of child abuse material files, that the child sexual abuse materials at the core of this investigation are some of the most "horrific abuse of children" and "most egregious" investigators have ever seen, and that "many of the children featured in the images and videos were just infants who were exposed to obvious and intentional pain and suffering". (Copies of news articles regarding this international operation, one of which specifically identifies the Father as one of those charged, are annexed hereto as **Exhibit B,** which are fully incorporated herein).

127.   The Father's criminal Release Order and bail conditions (copy at **Exhibit C,** which is fully incorporated herein) prevents him from being alone with the subject children.

128.   The terms of the Father's criminal Release Order and bail conditions direct that the Father is prohibited from being alone with anyone under the age eighteen (18) years old unless he obtained written permission from the Jewish Child and Family Services ("JFCS") in advance authorizing him to be alone with the parties' children, and it prevents him from possessing any device capable of accessing the internet, from possessing any image of a child under 18, or from coming within 25 meters of any school, park, community center or other place where children are likely to be unless under the continuous and direct supervision of his surety.

129.   JFCS, who became involved with the parties' family as a result of the Father's arrest, provided a file closing letter addressed to both the Mother and the Father dated January 21, 2022 (mistakenly dated January 21, 2021), that states JFCS is closing the file, as the fact that the children are now residing outside of Canada means that the children are no longer in need of protection since they are not having in-person visits with the Father. (Copy of January 21, 2022 letter from JFCS is attached at **Exhibit D,** which is fully incorporated herein).

130.   The January 21, 2022 letter from JFCS at **Exhibit D** acknowledges that the Mother has "full supervision of the children with the father."

131.   JFCS' January 21, 2022 letter recommends that JFCS be contacted if the children return to Toronto, that the children not have unsupervised visits with the Father,

and that any in-person access would need to be supervised by the Mother or a third party that understands the risk and the level of supervision required.

132.    The Mother is the only adult currently authorized and approved to supervise the Father with the children.

133.    The paternal grandparents are not currently authorized to supervise the Father and the subject children.

134.    In connection with the Canadian court proceedings, on or about March 8, 2022, the Father filed an application with the Canadian court which requests, among other things, that the court issue an order for the immediate return of the parties' two children, NBB and AAB, to Ontario, Canada.

135.    The Father alleged in the aforesaid application that the Mother had removed the subject children from Canada to the United States.

136.    The Father's aforesaid application requests an order that decision making responsibility with respect to the subject children be allocated to the paternal grandparents and the Father on a joint/shared basis, pursuant to section 16.3 of the Divorce Act and/or pursuant to section 21 of the Children's Law Reform Act.

137.    The Father's aforesaid application requests an order that the subject children shall reside with the paternal grandparents and the Father, pursuant to section 16.2 of the Divorce Act and/or pursuant to section 21 of the Children's Law Reform Act.

138.    The Father's aforesaid application requests an Order prohibiting the Mother, or her agents, from removing the subject children from the province of Ontario, pursuant to section 28(c)(iv) of the Children's Law Reform Act.

139.    The Canadian court did not grant the Father's request for an order directing the immediate return of the children to Canada, or any other requests for relief made by the Father.

140.    In response to the Father's aforesaid application, the Canadian Court issued an Order dated March 21, 2022, that provides as follows: "The [Mother] shall ensure that the children have a zoom call with the [Father] at least three times per week, pending the return of the motion and without prejudice to either party to argue the calls should take place more or less often." Copy of March 21, 2022 Order is annexed at **Exhibit E** and is fully incorporated herein.

141.    Therefore, pursuant to the March 21, 2022 Order of the Canadian court, the Father is only permitted to have virtual contact with the subject children consisting of a zoom call three times per week. The Father was not granted any in-person contact or access with the children.

142.    Because of the Father's limited access to the children (only being virtual, three times per week), the removal of the children to New York does not violate, breach, or interfere with any of the Father's rights of custody.

143.    There is no reason to order the subject children to be returned to Canada, especially since the Father is only permitted to have virtual contact with the children via zoom, three times per week.

144.    On or about April 20, 2022, the Mother filed a Family Offense Petition against the Father with the Family Court of the State of New York, Sullivan County. A copy of the Family Offense Petition is annexed at **Exhibit F**, and which is fully incorporated herein.

145.     As a result of the aforesaid Family Offense Petition, the Family Court of the State of New York, Sullivan County, the Honorable Danielle E. Jose-Decker, issued two Temporary Orders of Protection, the most recent dated May 16, 2022. A copy of the May 16, 2022 Temporary Order of Protection is annexed at **Exhibit G** and is fully incorporated herein.

146.     The May 16, 2022, Temporary Order of Protection precludes the Father from having any in-person contact with the parties' children but mirrors the March 21, 2022 Canadian Order at **Exhibit E** permitting zoom contact three times per week.

147.     Therefore, the Father's access to the subject children is limited by Order of the Canadian Court (**Exhibit E**) and by Order of the Sullivan County of New York Family Court (**Exhibit G**), to permitting the Father to have only limited virtual contact with the subject children three times per week.

148.     Therefore, the Mother's move of the children from Canada to New York has not breached, affected or impacted the Father's rights of custody under the laws of Canada, as the Father continues to have the same custody rights to the children that he would have if the children were living in Canada, *to wit*, the Father is only entitled to have three zoom calls with the subject children per week.

149.     The Mother is the only parent with rights of physical custody of the children.

150.     There is no court order restricting the Mother's ability to move the children from Canada to New York.

151.     The Canadian court retains jurisdiction over the children and over the issue of child custody, and the children's move to the United States does not affect or change this.

152.     Since the Father has only limited virtual contact with the children, there is no need for the children to be physically present in Canada.

153.     Pursuant to Article 3 of the Hague Convention, the petitioner-Father has the burden of showing that the removal of the parties' children from Canada to the United States is in breach of his rights of custody attributed to him under the applicable laws of Canada.

154.     The Father has failed to satisfy his burden of proof and demonstrate, by a preponderance of the evidence, that his rights of custody have been breached.

155.     Therefore, the Court should deny the Petition and deny return of the children to Canada pursuant to Article 3 of the Hague Convention, as the Father has failed to satisfy his burden of proof and demonstrate that the children's move to the United States is, in fact, in breach of his rights of custody.

### AS AND FOR A THIRD SEPARATE AND DISTINCT DEFENSE

156.     The Mother restates and realleges the allegations contained in Paragraphs 1 through 155 of this Answer as though fully set forth herein.

157.     The Court should deny the Petition and deny repatriation of the children to Canada pursuant to Article 13(a) of the Hague Convention because the Father was not actually exercising his custody rights at the time the children left Canada for New York.

158.    As stated, the Father's rights to the children are limited, including that the Father is not permitted to have any unsupervised access with the children, and he is only permitted to have virtual contact with the children via three zoom calls per week.

159.    Accordingly, the Father was not exercising his custody rights at the time the Mother and the children fled from Canada to the United States.

## AS AND FOR A FOURTH SEPARATE AND DISTINCT DEFENSE

160.    The Mother restates and realleges the allegations contained in Paragraphs 1 through 159 of this Answer as though fully set forth herein.

161.    The Court should deny the Petition and deny repatriation of the children to Canada pursuant to Article 13(a) of the Hague Convention, as the Father had consented to or acquiesced in the children's move to the United States.

162.    During the year prior to the time the Mother fled with the children to Canada, the parties had many discussions about the Mother taking the subject children to reside with the maternal grandparents in New York.

163.    The Father was in agreement with this plan.

164.    On December 29, 2021, the Father witnessed the Mother packing suitcases for her and the children, and he did not object.

165.    Prior to be taken to the hospital on December 29, 2021, the Father placed some documents, such as the children's birth certificates, as well as toys and other items for the children in one of the suitcases.

166.    The Father told the Mother's sister, who was present at that time, about the documents he placed in the suitcase.

167.     The Father sent the Mother a text message stating that the parties' children should forget about him, and NBB "…doesn't deserve to have a black mark on his name" because of him.

168.     The Father was aware of the Mother's intention to take the children from Canada to the United States, and he consented and/or acquiesced to same.

## AS AND FOR A FIFTH SEPARATE AND DISTINCT DEFENSE

169.     The Mother restates and realleges the allegations contained in Paragraphs 1 through 168 of this Answer as though fully set forth herein.

170.     Article 13(b) of the Hague Convention states that the Court is not bound to order the return of the children when there is a grave risk that child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

171.     The Court should deny the Petition and deny repatriation of the children to Canada pursuant to Article 13(b) of the Hague Convention, as there is a grave risk that the children's return to Canada would expose them to physical or psychological harm or would otherwise place the children in an intolerable situation.

172.     The Father is charged with horrific criminal acts involving pornographic images of young children. The subject children in this case are young children.

173.     It is public knowledge in the Canadian community that the Father was charged with two heinous crimes, *to wit*, access and possession of child pornography.

174.    As a result of the Father's arrest for these crimes, parents of children the same ages as the subject children do not want their children to play with or associate with the parties' children.

175.    If the subject children are directed to return to Canada, it is likely that at least the older child, NBB, will learn about the Father's criminal acts, which would be traumatizing for the child.

176.    If the subject children are directed to return to Canada, it is likely the children would be stigmatized and/or ostracized by the community and their peers because of the Father's criminal acts.

177.    If the subject children are directed to return to Canada, it is likely the children would be exposed to significant harm as a result of the Father's deviant and criminal tendencies involving child pornography.

178.    On many occasions over the last few years, the Father has expressed suicidal ideation.

179.    The Father attempted to commit suicide during the parties' marriage, at least once in the Mother's presence.

180.    The Father has been diagnosed with borderline personality disorder and does not consistently comply with therapy or medication requirements.

181.    The Father is mentally unstable and his physical presence in the children's lives would likely cause the children psychological and possible physical harm and would place the children in an intolerable situation.

182.    The Father engaged in wrongful acts of domestic violence against the Mother, including on one occasion forcefully and tightly pulling a necktie around the

23

Mother's neck to the point where the Mother almost fainted. See Family Offense Petition filed by the Mother against the Father at **Exhibit F**.

183.    The spousal abuse inflicted by the Father on the Mother demonstrates that the children would be at a heightened risk of physical or psychological harm if and when they would be exposed to the Father, and the children would be placed in an intolerable situation.

184.    The facts and circumstances of this case demonstrates that children's return to Canada would likely expose them to psychological and/or physical harm and would place the children in an intolerable situation.

185.    There is a substantial likelihood that the Father will be incarcerated as a result of the criminal charges pending against him and that the Father's access to the children will be minimal at best.

186.    The ameliorative measures proposed by the Father would not be effective in this case because: (A) the Father has consistently and continuously resisted and refused appropriate mental health treatment, leaving multiple therapists after a few visits, and neglecting his responsibility to find new ones; (B) the Father has already broken the conditions of his release on multiple occasions, including but not limited to accessing the internet unsupervised and possessing electronics which are capable of accessing the internet (including removing the Mother's iPad from the parties' apartment, without the Mother's consent or permission, prior to the time the Mother left Canada for New York); (C) the paternal grandparents are not currently approved by JCFS to supervise the Father and the children; (D) the paternal grandparents are not appropriate supervisors, as they do not understand the concern and level of supervision required, and they are not capable of

providing appropriate supervision; (E) in the past when the paternal grandparents were approved to supervise the Father and the children, they failed to properly supervise, including on numerous occasions leaving the Father and the children in a room without supervision; (F) the paternal grandmother had made some concerning statements that minimized the impact of the Father's criminal activities, such as claiming that "nobody was hurt" during a meeting with a JFCS caseworker; and (G) there is no way to ameliorate the horrific criminal charges involving child pornography pending against the Father.

187.    The Mother and the children have no home in Canada, so they have no place to reside if the children are ordered to return to Canada. The Mother and the children would be financially dependent on the father for housing, but the father does not have the financial means to pay for housing and otherwise support the Mother and the children.

188.    The Father has not paid any monies towards the financial support of the children.

189.    The children have no place to reside if they are ordered to return to Canada.

190.    The Mother is unable to financially support the children if the children are ordered to return to Canada, which would likely also cause the children physical and/or psychological harm and would place them in an intolerable situation.

191.    The Father will likely be incarcerated relating to his criminal charges of possession and access to child pornography, which further demonstrates the Father's inability to pay for housing for the Mother and the children, and to otherwise provide sufficient financial support for the Mother and the children.

192.    The Father's criminal activities involving child pornography, combined with his history of suicide ideation, his mental health issues, his failure to strictly comply

with the terms of his criminal Release Order, his history of domestic violence/spousal abuse against the Mother, and the Father's inability to provide adequate financial support for the Mother and the children in Canada, demonstrates that there is a grave risk that the children's return to Canada would expose them to physical and/or psychological harm and/or would otherwise place the children in an intolerable situation.

193.    The Father's criminal activities involving child pornography, combined with his history of suicide ideation, his mental health issues, and his failure to strictly comply with the terms of his criminal Release Order, and his history of domestic violence/spousal abuse against the Mother demonstrates that the Father is not stable and he cannot be trusted to comply with court orders, thereby demonstrating that any ameliorative measures would fail and would not sufficiently protect the children.

## AS AND FOR A SIXTH SEPARATE AND DISTINCT DEFENSE

194.    The Mother restates and realleges the allegations contained in Paragraphs 1 through 193 of this Answer as though fully set forth herein.

195.    The Court should deny the Petition and deny repatriation of the children to Canada because the relief requested in the Petition for the return of the children to Canada is contrary to the best interests of the subject children.

196.    The Mother and the children are currently residing with the maternal grandparent at their home located in Sullivan County, New York.

197.    The children have a safe, loving and stable home environment in New York and are settled into their home in New York.

198.    The Mother fled with the children to New York to protect the children from the effects of the Father's horrific criminal actions, to protect her and the children from the

Father's abusive and/or unstable conduct, and to provide the children with safety and stability.

199.    The Mother and the children have no home in Canada, so if the children are directed to return to Canada, the Mother would have to return with the children and find housing for her and the children in Canada.

200.    The Mother had no employment and no income so she would have no independent means of paying for the expenses for her and the children. The Mother does not have the financial means to obtain suitable housing for her and the children in Canada or to support herself and the children in Canada.

201.    The Father has not paid any child support or provided any financial support for the children.

202.    The Mother is the only parent who can be with the children and who can take care of the children and tend to their needs.

203.    The maternal grandparents have been a reliable and consistent source of emotional, social, and financial support for the Mother and the children.

204.    The parties' older child, NBB, attends school in New York, he is in the process of receiving speech therapy in New York, he has friends and family in New York, and his medical/dental providers are in New York.

205.    The parties' younger child, AMAB, has family in New York, and his medical/dental providers are in New York.

206.    Both of the parties' children are involved and integrated in all aspects of daily and cultural life in New York.

207.    The subject children are settled in New York, where they can avoid the stigma and ostracization associated with the Father's criminal charges and pending incarceration, as well as avoiding exposure to, and heightened risk of injury from, the Father's wrongful conduct, including his domestic violence and deviant and criminal behaviors.

208.    The Father is not fit to parent the children and is not safe to be alone with the children.

209.    Directing the children to return to Canada would uproot them from their stable, safe, and loving home and environment, as well as from their school, friends and family in New York, and would be contrary to the children's best interests.

210.    The issue of the Mother's relocation is pending before the Canadian Courts, and the Mother has submitted to the jurisdiction of that Court.


WHEREFORE, Respondent-Mother demands judgment dismissing the Petition herein.

Dated:          New City, New York
                May 20 2022

                                LAW OFFICE OF ERIC OLE THORSEN

                                By:
                                ERIC OLE THORSEN, ESQ. (ET-7491)
                                Attorney for Respondent
                                5 South Little Tor Road
                                New City, New York  10956
                                (845) 638-2726

<u>VERIFICATION</u>

STATE OF NEW YORK          )
                          )ss.:
COUNTY OF ROCKLAND         )

DORONA MIA ZIERLER being duly affirmed, deposes and says:  I am the

respondent in the action herein; I have read the annexed VERIFIED ANSWER, know the

contents thereof and the same are true to my knowledge, except those matters therein which

are stated to be alleged on information and belief, and as to those matters, I belief them to

be true.

DORONA MIA ZIERLER

Affirmed to before me this
20 day of May, 2022

Notary Public

ERIC OLE THORSEN
Notary Public - State of New York
No. 02TH4646344
Qualified in Rockland County
My Commission Expires 6/30/

28